# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3945

_____

United States of America

*Plaintiff - Appellee*

v.

Steven Blakeney

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 20, 2017
Filed: December 11, 2017

_____

Before WOLLMAN, MELLOY, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Following a jury trial, Steven Blakeney was convicted of one count of conspiracy against rights, in violation of 18 U.S.C. § 241; one count of deprivation of rights under color of law, in violation of 18 U.S.C. § 242; and one count of falsifying a record, in violation of 18 U.S.C. § 1519. On appeal, he challenges the sufficiency of the evidence, two evidentiary rulings, a statement made by the

Government during closing argument, and the district court's[1] responses to questions presented by the jury during deliberation. For the reasons that follow, we affirm.

## I.

The conduct underlying Blakeney's conviction arose during a mayoral election in the city of Pine Lawn, Missouri between incumbent mayor Sylvester Caldwell and candidate Nakisha Ford. In the runup to the election, Blakeney, a Pine Lawn police sergeant, visited the Pine Lawn Food Market. He asked owner Mazen "Mario" Samad and his brother, store manager Akram "Sam" Samad (together, "the Samad brothers"), to allow him to display a Caldwell campaign sign. Despite Mario's refusal, Blakeney placed the sign in the store's window.

On March 31, 2013, Ford entered the Pine Lawn Market and saw the sign, which depicted her mugshot from a previous arrest. Ford asked Mario to take the sign down. Mario told her that he would not remove the sign himself but that she could do what she wanted with it. Ford removed the sign and left. Mario did not object to Ford's removing the sign, and he did not call the police.

Later that day, Blakeney and several other police officers came to the Pine Lawn Market and discovered the missing sign. Blakeney demanded to see the security camera footage and called Sam to the store. Blakeney then instructed Sam to call 911 to report the theft of the sign and threatened to frame him for drug possession if he did not comply. After Sam called 911, Pine Lawn Prosecutor Anthony Gray and other police officers came to the store and reviewed the security camera footage.

---

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

The Samad brothers then accompanied Blakeney to the police station, where he instructed them to give statements using language he provided. Sam's son, Mohammed, prepared the statements according to Blakeney's instructions because the Samad brothers do not write English proficiently. At one point, Blakeney stopped Sam's interview to instruct Sam to change his story. He also directed Sam to step out of the room, at which point Mayor Caldwell advised Sam, "Oh, we['ll] take care of you. Don't worry about it." The mayor also told Sam to say that he obtained the sign from city hall himself.[2] The Samad brothers signed the statements, which stated that Sam obtained the sign from city hall and that Ford created a disturbance and stole the sign. At Blakeney's trial, the Samad brothers testified that these statements were untrue.

After the statements were complete, Officer Jesse Brock completed Pine Lawn Police Department Incident Report No. 13-1337 based on information Blakeney provided. Blakeney approved the report, and Brock also filled out a form to obtain a "wanted" for Ford.[3]

Blakeney, three other police officers, the chief of police, and Gray then proceeded to Ford's house to arrest her. Brock testified that he did not recall anyone suggesting that they issue Ford a summons instead of making the arrest. Ford was taken into custody, booked, and transported to a jail in St. Ann, Missouri. An hour later, Ford was returned to the Pine Lawn Police Department, posted a $750 bond, and was released early in the morning. Ford was charged with stealing and disorderly

---

[2]Blakeney and Mayor Caldwell also instructed the Samad brothers that they would have to testify against Ford in court. Both received subpoenas but never testified.

[3]A "wanted" provides authority for an arrest but differs from an arrest warrant because it is not a statement of probable cause signed by a judge. *See State v. Pate*, 469 S.W.3d 904, 910 (Mo. Ct. App. 2015).

conduct, but the charges ultimately were reduced to a single littering charge. Ford pleaded guilty and paid a $500 fine.

After these events came to light, Blakeney was charged in a three-count indictment with conspiracy against rights, deprivation of rights under color of law, and falsifying a record. Blakeney did not testify at his trial. The jury submitted two questions to the judge during deliberation. First, the jury asked to read the testimony of Sam, Mario, and Mohammad Samad. Outside the presence of the parties, the judge responded that a transcript was unavailable, and he later informed both sides of this exchange. Second, the jury asked for clarification as to which document Blakeney was accused of falsifying. The judge responded, "You are to be guided solely by the evidence submitted and the Court's instructions." The jury convicted Blakeney on all counts, and he timely appeals his conviction.

## II.

### A. Sufficiency of the evidence

Blakeney first argues that the Government presented insufficient evidence to demonstrate that he reached an agreement with any would-be coconspirator to violate Ford's civil rights. "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Huyck*, 849 F.3d 432, 441 (8th Cir. 2017). We must uphold the verdict "[i]f there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." *Id.* Reversal is not appropriate "[e]ven where the evidence rationally supports two conflicting hypotheses," *id.*, and is required "only if no reasonable jury could have found guilt beyond a reasonable doubt." *United States v. Gray*, 700 F.3d 377, 378 (8th Cir. 2012).

It is a crime for "two or more persons [to] conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States." 18 U.S.C. § 241. For a conspiracy against rights, the Government must prove "an actual agreement between two or more persons to accomplish a prohibited object." *United States v. Morado*, 454 F.2d 167, 169 (5th Cir. 1972); *United States v. Lee*, 6 F.3d 1297, 1307 (8th Cir.1993) (en banc) (Lay, J., concurring and dissenting).

The indictment names Sam Samad as a coconspirator and references other coconspirators "known and unknown." Blakeney contends that Sam could not have been a coconspirator because Blakeney coerced him to make false statements by threatening to frame him for drug possession, and thus no agreement existed between them. *See United States v. May*, 727 F.2d 764, 765 (8th Cir. 1984) (holding that coercion excuses a criminal act only when it "induce[s] a well-grounded apprehension of death or serious bodily injury if the act is not done"); *United States v. Wint*, 974 F.2d 961 (8th Cir. 1992) (explaining that "a reasonable, legal alternative to committing the crime" negates a coercion defense).

We need not decide whether coercion negates the agreement element of conspiracy in this case, however, because the evidence would allow a reasonable jury to find that another person, Mayor Caldwell, conspired with Blakeney to arrest Ford. Blakeney argues that the Government did not name Mayor Caldwell as a coconspirator until closing arguments and that it otherwise represented the conspiracy as one between Blakeney and "the store owners and managers." But the indictment referenced coconspirators "known and unknown," and Blakeney's lawyer acknowledged before trial that "it's my understanding that potentially one of the conspirators would, in fact, be Mayor Caldwell."

Blakeney further argues that only inadmissible hearsay establishes that Mayor Caldwell was a coconspirator. As we explain below, however, Mayor Caldwell's

statements are admissible, and the evidence is sufficient to establish that the mayor was a coconspirator. Sam testified that Mayor Caldwell was present at the police station and that Blakeney arranged for Caldwell to speak with Sam during his interview to encourage the Samad brothers to make false statements. Sam also explained that Caldwell planned for Blakeney to transport Sam to court to testify against Ford after her arrest. Several witnesses testified that Blakeney supported Mayor Caldwell and that the two were frequently in contact. Moreover, as her opponent in the mayoral race, Caldwell had motive to sabotage Ford's chances in the upcoming election.

Together, these facts allow a reasonable jury to conclude that there was an agreement between Blakeney and Mayor Caldwell and that Blakeney knew of and intentionally joined this conspiracy. As a result, we find that sufficient evidence supported Blakeney's conspiracy conviction.

Second, Blakeney argues that the evidence was insufficient to demonstrate that he deprived Ford of her rights under color of law by having her illegally arrested. Once again, we may reverse "only if no reasonable jury could have found guilt beyond a reasonable doubt." *Gray*, 700 F.3d at 378.

To secure a conviction for deprivation of rights under color of law, the Government must prove that a defendant acted "(1) 'willfully' and (2) under color of law (3) to deprive a person of rights protected by the Constitution or laws of the United States." *United States v. Lanier*, 520 U.S. 259, 264 (1997) (quoting 18 U.S.C. § 242); *see also United States v. Ramey*, 336 F.2d 512, 514 (4th Cir. 1964) ("When an officer, knowing a warrant to be illegal, groundless, or fictitious, willfully uses his authority, and/or such an instrument to arrest and incarcerate the accused, such action is a deprivation of the right of the arrested to liberty and a violation of 18 U.S.C. § 242."). Blakeney argues that Ford's arrest was not illegal because Officer Brock developed independent probable cause to arrest her for stealing or disorderly

-6-

conduct. The Government counters that this "attenuation" analysis applies only when determining whether the exclusionary rule excludes illegally obtained evidence and maintains that Blakeney had a duty to prevent Ford's arrest because he knew that it was baseless. *See, e.g., Utah v. Strieff*, 136 S. Ct. 2056 (2016).

Even if the attenuation doctrine were applicable, Blakeney's claim that Officer Brock developed probable cause for Ford's arrest from an independent source is unpersuasive. He argues that Brock established probable cause from his interviews of Mario Samad and April Brooks, a Pine Lawn Market cashier. These interviews, Blakeney claims, supplied Brock with information that Ford stole the campaign sign, which provided probable cause for her arrest. But Blakeney dispatched Officer Brock to the scene and provided all the information contained in the police report. In other words, Blakeney supplied the information that purportedly justified Ford's arrest, and Brock did not develop independent cause to arrest Ford.

Similarly, Blakeney contends that city prosecutor Gray independently brought the charges against Ford that led to her arrest. Gray watched the surveillance video at the store and authorized charges before the Samad brothers made false statements at the police station. To be sure, Officer Allen Lawson testified that Gray was present at the store and "everything had to kind of go through him . . . since he was the city prosecutor." Brock testified that "both Anthony Gray and Sergeant Blakeney advised me that there was enough to arrest Nakisha Ford." But Gray saw the video only after Blakeney—knowing Ford did not in fact steal the sign—summoned the authorities to the scene. In other words, Gray did not authorize the charges independent of Blakeney's actions.

As a result, we find that sufficient evidence supported Blakeney's conviction for illegal arrest.

## B. Evidentiary rulings

Blakeney also challenges two evidentiary rulings made by the district court. First, he contends that the admission of Exhibit 16, an unsigned copy of Pine Lawn Police Department Incident Report No. 13-1337, violated the best evidence rule. *See* Fed. R. Evid. 1002. Blakeney concedes that, because he did not object at trial, we review for plain error. *See* Fed. R. Crim. P. 52(b). Under this standard, the court may reverse only if the error is "plain," "affect[s] substantial rights," and "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (alterations in original).

The district court did not plainly err by admitting Exhibit 16. Under the Federal Rules of Evidence, "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. However, a signature is not required for a document to be an original. *See id.* 1001(d) ("An 'original' of a writing or recording means the writing or recording itself or any counterpart intended to have the same effect by the person who executed it or issued it."). Additionally, a duplicate is admissible "to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." *Id.* 1003.

Blakeney argues that without his signature, there is no way to verify that he approved the statements in the report. However, Brock testified that Blakeney provided the false information contained in the report, directed him to prepare it, and approved it when it was completed. *See United States v. Moyer*, 674 F.3d 192, 208 (3rd Cir. 2012) ("There was sufficient evidence to prove that [the defendant] knowingly . . . endorsed false information contained in his subordinate's report . . . ."). As a result, admitting the unsigned police report did not violate the best evidence rule, and the district court did not plainly err.

Second, Blakeney argues that the district court erred by permitting hearsay testimony of Mayor Caldwell's statements to Sam. Blakeney concedes that he did not object at trial and that the court reviews for plain error. *See* Fed. R. Crim. P. 52(b).

According to Sam's testimony, Mayor Caldwell assured Sam during the police interview that they would take care of him. Caldwell also coached Sam to say that Sam, not Blakeney, placed the sign in the store window. And after Ford was arrested, both Caldwell and Blakeney told Sam that he would have to testify against Ford in court. Blakeney contends that these statements are inadmissible hearsay.

An out-of-court statement "offered against an opposing party" that "was made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay. Fed. R. Evid. 801(d)(2)(E). For a statement to qualify for this exclusion, the Government must demonstrate, by a preponderance of the evidence, "(1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." *United States v. Beckman*, 222 F.3d 512, 522 (8th Cir. 2000). The court may conditionally admit the statement and rule on its admissibility at the conclusion of the evidence. *United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir. 1978). Moreover, "[w]hen determining whether a conspiracy existed, a court may consider the co-conspirator's statement itself." *Beckman*, 222 F.3d at 523 (8th Cir. 2000) (citing *Bourjaily v. United States*, 483 U.S. 171, 181 (1987)).

Blakeney argues that the Government did not provide additional evidence to prove that Mayor Caldwell was a coconspirator and did not identify him as a coconspirator until closing arguments. As we explained above, Mayor Caldwell's statements and the other evidence presented at trial demonstrated that Mayor Caldwell was Blakeney's coconspirator. The district court did not plainly err by admitting Sam's testimony.

## C. Government's comment during closing arguments

Blakeney argues that in closing arguments the Government inappropriately commented on his failure to testify. To demonstrate that the Government violated the Fifth Amendment by commenting on the accused's silence, "[a] defendant must establish that a prosecutor's comment was both improper and prejudicial to the defendant's substantial rights." *United States v. Sandstrom*, 594 F.3d 634, 661-62 (8th Cir. 2010) (internal quotation marks omitted). We review *de novo* whether the prosecutor has commented unconstitutionally on the defendant's failure to testify and then review for an abuse of discretion a district court's denial of a motion for a new trial. *Id.* at 662.

Although "a prosecutor may not comment on a defendant's failure to present evidence to contradict the government's case if the defendant alone had the information to do so," *United States v. Triplett*, 195 F.3d 990, 995 (8th Cir. 1999) (internal quotation marks omitted), the court "should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations," *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974).

Blakeney argues that the following language in the prosecutor's closing argument constitutes an improper comment on Blakeney's refusal to testify:

> Be reminded that you have to focus on the evidence in this case, what was testified to, things that were presented that were admitted into evidence, and not statements that were made in opening statement. You might recall in opening statement that Mr. Wright made several statements about what was going to be shown in the trial. And really, that's all they were, because they weren't backed up by any evidence. For example, he said you were going to hear that Mr. Blakeney did not

-10-

agree to arresting Ms. Ford, and that he said, "Whoa, let's—let's do a summons."

Blakeney contends that this statement refers to evidence that could only have come from his testimony and that the district court abused its discretion by overruling his objection and failing to take curative action. The Government, in turn, emphasizes that it sought to refute the defense's opening argument, which promised to show that Blakeney proposed issuing Ford a summons rather than arresting her.

Blakeney's argument fails because other witnesses could have testified that he objected to arresting Ford. Officer Brock testified that he did not recall anyone suggesting that a summons would be appropriate instead of an arrest. Several other officers were also present, and Blakeney could have called one of them to testify in rebuttal. Blakeney also could have called Gray and asked him whether Blakeney disagreed with the decision to arrest Ford. Because Blakeney was not the only witness whose testimony could have substantiated the defense's theory, the jury would not naturally take the Government's comment, in context, as a remark on Blakeney's refusal to testify. *See United States v. Gardner*, 396 F.3d 987, 992 (8th Cir. 2005) ("The existence of other relevant witnesses makes it unlikely that the jury would have viewed the challenged comments as pointing to defendant['s] silence at trial rather than to the lack of evidentiary support for the defense theory." (alteration in original and internal quotation marks omitted)). Accordingly, we conclude that the Government's comment was not improper.

## D. Jury questions

Blakeney also raises two issues related to the jury's questions during deliberation. First, he contends that the judge's supplemental instructions did not mitigate the jury's confusion when it inquired as to which document Blakeney was accused of falsifying. Blakeney did not object at trial and again concedes that we

review for plain error. *See* Fed. R. Crim. P. 52(b). "A district court has broad discretion to respond to a jury request for supplemental instructions. It must insure that any supplemental instructions given are accurate, clear, neutral and non-prejudicial." *United States v. Jenkins*, 792 F.3d 931, 935 (8th Cir. 2015).

After the jury asked which document Blakeney was accused of falsifying, the judge responded, "You are to be guided solely by the evidence submitted and the Court's instructions." The jury instructions included a verbatim recitation of the indictment, which specified that Blakeney was charged with falsifying police report 13-1337. That police report was admitted as Exhibit 16 and identified by the report number 13-1337.

The jury instructions therefore answered the question the jury posed. *See United States v. Hayes*, 574 F.3d 460, 481-82 (8th Cir. 2009) (affirming a conviction when the district court referred the jury to instructions that answered the jury's question). Accordingly, the district court did not plainly err in responding to the jury's questions about the falsified documents.

Finally, Blakeney argues that the judge plainly erred by responding to the jury's request for a transcript in Blakeney's absence. He also contends that the judge's response violated the Sixth Amendment by denying him a fair trial. The jury requested to read transcripts of the testimony of Sam, Mario, and Mohammed Samad. After failing to "track down everybody," the judge responded that "there is no transcript of that testimony to read." The judge later informed both attorneys, and neither attorney objected or proposed any additional response. The Government concedes that Blakeney had a right to be present during this incident but contends that the absence did not prejudice him.

Because Blakeney was given a chance to object even though he was not originally present, we review for plain error. *See United States v. Picardi*, 739 F.3d

1118, 1122 (8th Cir. 2014). The Federal Rules of Criminal Procedure provide that the defendant must generally be present at "every trial stage." Fed. R. Crim. P. 43(a)(2). "Communication between judge and jury in the absence of and without notice to the defendant creates a presumption of prejudice. Such presumption may be overcome, however, by a clear indication of a lack of prejudice." *United States v. Smith*, 771 F.3d 1060, 1063 (8th Cir. 2014).

Although the judge initially communicated with the jury in the absence of the defendant, the judge later informed both sides of the question and response and provided them an opportunity to object or suggest another response. Blakeney argues that he was prejudiced because he could have objected to the instruction at the time and requested that the court order the testimony to be prepared for the jury. Because the judge provided that opportunity once he "track[ed] down everybody," Blakeney's initial absence did not prejudice him. *See United States v. Anwar*, 428 F.3d 1102, 1114 (8th Cir. 2005) (finding that the judge's refusal of the jury's request for transcripts in the defendant's absence was harmless).

Moreover, the court did not plainly err in declining to provide the transcripts. "It is within the sound discretion of the trial court to determine whether to allow a jury to review properly admitted testimony . . . during deliberations." *United States v. Muhlenbruch*, 634 F.3d 987, 1001-02 (8th Cir. 2011). A defendant is not entitled to have the jury review a transcript unless "it can be demonstrated that the failure to permit the reading of requested testimony create[s] unfairness to the defendant." *United States v. Golliher*, 820 F.3d 979, 986 (8th Cir. 2016).

Blakeney argues that the testimony could have led the jury to the conclusion that Sam, Mario, and Mohammed Samad were unreliable witnesses. But the testimony requested was favorable to the Government in that it established that Blakeney forced the Samad brothers to make false statements. Thus, reviewing it likely would not have swayed the jury in Blakeney's favor. *See United States v.*

*Bassler*, 651 F.2d 600, 604 (8th Cir. 1981) (finding that the district court's refusal to read testimony to the jury did not create unfairness for the defendant because the testimony had not yet been transcribed and "the testimony requested was that of government witnesses favorable to the government and not defendants"). As a result, the district court did not plainly err by refusing to provide the requested transcript.

**III.**

Accordingly, we affirm.[4]

———————————————————

———————————————————

[4]Blakeney has also filed multiple motions to supplement the record. We decline to depart from the general rule prohibiting consideration by an appellate court of evidence that was not presented to the trial court. *See Ferguson v. United States*, 623 F.3d 627, 631 n.2 (8th Cir. 2010). Blakeney's *pro se* motion to set an appeal bond amount or, in the alternative, to be placed on home confinement pending appeal is denied as moot.