United States Court of Appeals
For the Eighth Circuit
_____

No. 21-3786
_____

United States of America

*Plaintiff - Appellee*

v.

Timothy E. Caruso

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: October 20, 2022
Filed: March 29, 2023
_____

Before SMITH, Chief Judge, BENTON and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

Timothy Caruso used the social-media website Pinterest to trade child pornography. Even so, he claims that the evidence was insufficient to show that he distributed or accessed it. *See* 18 U.S.C. § 2252(a)(4)(B) (access with intent to view); 18 U.S.C. § 2252A(a)(2), (b)(1) (distribution). And regardless, he thinks the

district court[1] should have kept the jury from hearing about his Pinterest profile, search history, and chat records.  We affirm.

I.

A repeat sex offender, Caruso was on supervised release and living in the guest bedroom of a friend's house when he decided to set up a Pinterest account.  In addition to a roof over his head, his friend gave him an Android cellphone and access to the internet—the tools necessary to trade in child pornography.

The first step was setting up an account.  While at work, he used the Android phone and internet access to create a Pinterest account with the email address "tcaruso132000@gmail.com."   Although he started with the default username "tcaruso132000," he soon switched to "MrCharlieHust17" and adopted the screen name "Charlie hustle."

The second step in his plan was finding like-minded users online.  He first tried Pinterest's search function.  His search history was filled with phrases like "teens twerking," "tweens in bikin[i]s," "preteen pussy," "spank me daddy," and "sexy butts."  He also created "boards," which displayed pictures and other material he found interesting for others to see.  Some of the boards were unremarkable: they contained pictures of "Wicked tattoos," "Fly Shoes," and "Chicago bears football."  Others had names like "hot schoolgirl outfits," "boy shorts," "nipples," "boobs," and "Hot Service Chicks."

Caruso's plan worked.  Before long, he started chatting with other users.  One sent a message complimenting him on his "great collection of cute girls[.]"  As the back-and-forth continued, Caruso mentioned that he had been "grooming" his

---

[1]The Honorable Robert F. Rossiter, Chief Judge, United States District Court for the District of Nebraska.

girlfriend's three children.  It was "divine," he added, "to indulge in our special little princesses."

He had a similar conversation with another user.  In response to a message about masturbation, Caruso said that he had "ducked 5 little girls so [he knew] the feeling" and broached the possibility of a "trad[e]."  He then told a third user that he "[l]ove[d] [his] boards" and wondered whether there was "any chance" of "anything w[ith] a li[ttle] less on" to "share . . . privately."  Neither would trade with him.

Caruso was undeterred.  On Christmas Eve, he sent a message to Pinterest user "redactedzcpkqjr" saying "I'm really trying to find sexy littles."  When redactedzcpkqjr replied with "[y]our added," Caruso shared that he wanted to find "a gif of a girl . . . on the internet" because he had "lost" his "underage collection."  He then apparently offered a trade: "Please find her and can I post nudes on our littles board."  Later that day, Caruso uploaded a single image depicting child pornography onto the board from his friend's house.

Though technically private, the "Little" board was on law enforcement's radar.  The National Center for Missing and Exploited Children had received a tip that a user had uploaded child pornography from an Android phone.  Once local authorities found out the user in question was Caruso, he faced two child-pornography counts: one for distribution, *see* 18 U.S.C. § 2252A(a)(2), (b)(1), and another for access to it with intent to view, *see* 18 U.S.C. § 2252(a)(4)(B).  The district court denied Caruso's motion for judgment of acquittal after a jury found him guilty of both counts.

II.

Caruso continues to attack the verdict in two ways.  First, he claims that uploading the image to the "Little" board does not count as "distribut[ion] . . . by computer."  18 U.S.C. § 2252A(a)(2).  Second, even assuming someone distributed child pornography, the government never proved it was him.

-3-

Both arguments challenge the sufficiency of the evidence, which we review de novo. *See United States v. White*, 962 F.3d 1052, 1055 (8th Cir. 2020). In doing so, we view "the evidence in the light most favorable to the government and draw[] all reasonable inferences in favor of the verdict." *Id.*

A.

The first question focuses on what it takes to "distribute[]" child pornography. 18 U.S.C. § 2252A(a)(2). To "distribute" means "to give out or deliver[,] esp[ecially] to the members of a group." *Webster's Third New International Dictionary* 660 (2002); *see The American Heritage Dictionary of the English Language* 525 (5th ed. 2016) (defining "distribute" as "[t]o deliver or pass out"). And the statute is clear about what the defendant must "give out or deliver": "any child pornography." 18 U.S.C. § 2252A(a)(2)(A); *see United States v. Shaffer*, 472 F.3d 1219, 1223–24 (10th Cir. 2007) (discussing the "distribution" requirement).

In a digital world, it is no surprise that distribution often happens digitally. One way is to simply post child pornography, like Caruso did, in a place where other people can view or download it. *See United States v. Sewell*, 513 F.3d 820, 822 (8th Cir. 2008) (concluding that "placing a file in a shared folder with descriptive text is clearly an offer to distribute the file" under 18 U.S.C. § 2251(d)(1)(A)). And here, Caruso knew that there was at least one other user, redactedzcpkqjr, who had access to the "Little" board. After all, he added Caruso. From that evidence, the jury was free to draw the common-sense conclusion that he had access to the pornographic image that Caruso posted. Nothing more was necessary to "distribute[] . . . child pornography . . . by computer." 18 U.S.C. § 2252A(a)(2); *see United States v. Huyck*, 849 F.3d 432, 441 (8th Cir. 2017) ("If there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt, then we must uphold the verdict." (citation omitted)).

B.

Caruso's second sufficiency-of-the-evidence challenge arises out of his alternative-perpetrator defense. In his view, the government failed to prove that he was the "Charlie hustle" who uploaded the image on Pinterest. *See* 18 U.S.C. §§ 2252(a)(4)(B), 2252A(a)(2), (b)(1). In our view, the government proved its case.

First, it showed how Caruso set up the account. *See Huyck*, 849 F.3d at 442 (affirming a conviction because the defendant knew how to use a computer program to access child pornography and was the only adult around at the time). The government's theory was that he created his profile while at work and then uploaded the image from his friend's house using an Android phone. To support that theory, his friend confirmed that Caruso was in each of those places during the dates and times in question and that he had given him an Android phone.

Second, the government connected the Pinterest account to Caruso, who was not particularly adept at covering his tracks. The first telltale sign was that its creator used the email account tcaruso132000@gmail.com, a perfect match to Caruso's name. The user's "boards" also matched his interests: tattoos and Chicago Bears football. And Caruso's girlfriend confirmed both that she had three young daughters and that she had seen a reference to the screen name "Charlie hustle" in one of his drawings. Finally, a search of the tcaruso132000@gmail.com email account turned up pictures of Caruso himself, which further linked him to the Pinterest account. On this record, it is hard to see how anyone *other than* Caruso could have posted the image.

Still, Caruso points the finger elsewhere. According to him, his friend did it—the same one who offered him a place to stay, found him a job at the same car-repair center where he worked, and gave him a cellphone. In Caruso's view, his friend had opportunity, including access to his drawings, the Android phone, and the same internet he used. From there, Caruso faults the "[t]he government [for] fail[ing] to rule out" his friend.

-5-

Caruso's alternative-perpetrator theory is weak. *See United States v. Manning*, 738 F.3d 937, 945 (8th Cir. 2014) (affirming a conviction for receipt of child pornography despite the defendant's baseless claim that his wife accessed his computer remotely and framed him for the crime). After all, "Charlie hustle" created the Pinterest account the day after Veteran's Day, when his friend was not even at work. And the government connected the "Charlie hustle" name to Caruso directly, both through his drawings and the email account. At a minimum, "[t]he jury was free to reject" the hypothesis that his friend did it. *Id.*; *see Huyck*, 849 F.3d at 441 (concluding that when the evidence "rationally supports two conflicting hypotheses," the court will not disturb a guilty verdict (citation omitted)).

III.

Even if the jury had enough evidence to find him guilty of both counts, Caruso believes he deserves a new trial because it heard too much. At trial, he objected to the admission of his public Pinterest profile, which displayed the boards he had created and the sexually suggestive images he had "pinned." In his view, it was impermissible propensity evidence, admitted for no other purpose than to show that he was a bad guy. *See* Fed. R. Evid. 404(b). And even if its admission served some other relevant purpose, it was "unfair[ly] prejudic[ial]." Fed. R. Evid. 403. Our review is for an abuse of discretion, with deference shown "to the [district] judge who saw and heard the evidence." *See United States v. Cody*, 114 F.3d 772, 777 (8th Cir. 1997) (citation omitted).

A.

Propensity evidence is generally inadmissible. By propensity evidence, we mean "using another bad act to show that an individual is likely to do the same thing again in the future." *United States v. Vaca*, 38 F.4th 718, 721 (8th Cir. 2022). Caruso's theory here is that the jury may have convicted him based on the sexually

suggestive board names and images in his public Pinterest profile. Someone who collects those images, the argument goes, might also collect similar images of kids.

Although using the Pinterest boards to show his "generalized tendency to act in [that] way" was off-limits, the government had another reason for admitting it. David P. Leonard, *The New Wigmore: A Treatise on Evidence: Evidence of Other Misconduct and Similar Events* § 9.2.1, at 633 (Richard D. Friedman ed., 2d ed. 2019). Rule 404(b) contains a long "list of" acceptable non-propensity purposes, "from proving state-of-mind requirements like 'intent' and 'knowledge' to countering potential defenses like 'mistake.'" *Vaca*, 48 F.4th at 722 (quoting Fed. R. Evid. 404(b)(2)). The ones that apply here are "plan" and "preparation." Fed. R. Evid. 404(b)(2).

The classic plan-or-preparation scenario is the commission of one crime as part of a larger scheme to commit another. One prominent treatise gives an example: "steal[ing] a car to use" as the getaway vehicle in a bank robbery. 1 Robert P. Mosteller et al., *McCormick on Evidence* § 190.2, at 1150 (8th ed. 2020); *see United States v. Carroll*, 207 F.3d 465, 468 (8th Cir. 2000) (using the same example). In those circumstances, the earlier "automobile theft" is admissible "in a prosecution for the robbery." 1 Mosteller et al., *McCormick on Evidence*, *supra* § 190.2, at 1150; *Lewis v. United States*, 771 F.2d 454, 455–56 (10th Cir. 1985) (explaining that the burglary of a store to get a "cutting torch" is admissible in a trial for the burglary of the post office, where the torch was used). The reason is that the jury can infer that "a person who has formulated a plan is more likely to carry out [its] elements." 1 Mosteller et al., *McCormick on Evidence*, *supra* § 190.2, at 1150.

Keep in mind that non-criminal "[a]cts" count too. Fed. R. Evid. 404(b). If the robber decided to buy bank-vault-cracking tools at a hardware store, evidence of that non-criminal act would also be admissible in a later robbery trial, as an "intermediate step" toward the commission of a crime. Leonard, *The New Wigmore*, *supra* § 10.2, at 713. The point is that either act—stealing the getaway vehicle or buying the tools—is part of a single "course of conduct leading to . . . the crime

charged." *United States v. Adcock*, 558 F.2d 397, 401 (8th Cir. 1977); *see* 2 Mark S. Brodin et al., *Weinstein's Federal Evidence* § 404.22[5][a], at 404-158 (2d ed. 2022) ("Other-crime evidence may be admissible if the other act or crime is part of a common scheme or plan that includes the charged offense.").

Just like the stolen car used in the bank-robbery example, Caruso's Pinterest profile was the vehicle driving his child-pornography offenses. The boards he created—with names like "hot schoolgirl outfits" and "Hot Service Chicks"— advertised to other users that he was looking for sexually explicit content. And when those other users contacted him to ask about the images he had "pinned," he was clear about what he wanted: child pornography. Setting up the Pinterest account and creating those sexually suggestive "boards," in other words, were the "intermediate step[s]" in Caruso's overall plan to trade in child pornography. Leonard, *The New Wigmore*, *supra* § 10.2, at 713. Revealing that plan to the jury was the non-propensity use that made it admissible. *See* 1 Mosteller et al., *McCormick on Evidence*, *supra* § 190.2, at 1150–52; *see also Vaca*, 38 F.4th at 722–23 (holding that there was no abuse of discretion when "there was *at least* one other non-propensity purpose").

B.

For similar reasons, Caruso argues that the "probative value" of allowing the jury to see his public Pinterest profile was "substantially outweighed" by the "unfair prejudice" it caused. Fed. R. Evid. 403. The probative value came from its potential to show that Caruso planned to trade in child pornography from the moment he set up the account and created his boards. It then allowed the jury to infer that, as someone "with a plan," he was "more likely to act consistently with" it. Leonard, *The New Wigmore*, *supra* § 9.3, at 657. Any "unfair prejudice" from this otherwise permissible use of the evidence did not "substantially outweigh[]" its probative value. Fed. R. Evid. 403; *see United States v. Johnson*, 535 F.3d 892, 897 (8th Cir. 2008) ("When the evidence in question is relevant, we defer to the district court's

judgment with respect to balancing its probative value with its risk of unfair prejudice.").

Besides, the evidence's probative value is what led to the potential prejudice. We do not doubt that showing the jurors board names like "hot schoolgirl outfits" and "Hot Service Chicks" may have turned the jury against him. But there was nothing unfair about it: it allowed the jury to understand how he was able to attract the attention of other like-minded users who might be willing to trade child pornography. These were acts in "'preparation' for the later [crime]," which means there was good reason to let the jury hear about them. Leonard, *The New Wigmore*, *supra* § 10.1, at 711; *see Old Chief v. United States*, 519 U.S. 172, 180 (1997) (explaining that "[u]nfair prejudice . . . means an undue tendency to suggest decision on an improper basis" (quotation marks omitted)); *Huyck*, 849 F.3d at 440 (noting that Rule 403 protects against "evidence which is so inflammatory on its face as to divert the jury's attention from the material issues in the trial" (brackets and citation omitted)).

IV.

Caruso raises the same general complaints about the government's use of his search and chat histories. Unlike his profile, however, he never objected to their admission at trial, meaning our review is for plain error. *See* Fed. R. Crim. P. 52(b). To succeed, Caruso "has to show, among other things, that there was a clear or obvious [error] under current law." *United States v. Nunez-Hernandez*, 43 F.4th 857, 861 (8th Cir. 2022) (quotation marks omitted).

For the same reasons as his Pinterest profile, he has failed to do so. If anything, the search and chat histories had an even closer connection to Caruso's child-pornography offenses. When he told redactedzcpkqjr, for example, that he was "trying to find" pornography "on the internet" and wanted to "post nudes on our littles board," the jury could conclude that is exactly what he did. *See* 1 Mosteller et al., *McCormick on Evidence*, *supra* § 190.2, at 1152. The evidence was also

-9-

relevant for another purpose: it refuted Caruso's claim that no one else had access to the "Little" board. The point is that admitting it was neither clearly nor obviously erroneous. *See Nunez-Hernandez*, 43 F.4th at 861.

V.

We accordingly affirm the judgment of the district court.

_____