# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2742
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| Richard L. Davis, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  December 16, 2003
Filed:  May 10, 2004
_____

Before MELLOY, BEAM, and COLLOTON, Circuit Judges.
_____

MELLOY, Circuit Judge.

A jury convicted Richard Davis of one count of possession with intent to distribute more than fifty grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1).  Davis filed motions for judgment of acquittal and a new trial.  The district court granted the Motion for New Trial on an issue raised sua sponte: that the government had improperly and prejudicially shifted the burden of proof.  The government appeals the grant of the Motion for New Trial.  We reverse.

I.

On July 26, 2002, Davis was arrested in a hotel room with two other men, Anthony Chaney and Terry Harris. The specifics of the moments surrounding the arrest are disputed.

The government presented evidence to show the following: Davis was sitting on the couch when the officers entered the apartment. As the officers approached Davis, he stood up and reached into his pants pocket. The pants he was wearing were very tight, so that he could not button the top button nor zip them entirely. Due to the tightness of the pants, Davis struggled to remove an object from his pants pocket. When he succeeded in taking the object from his pocket, he attempted to conceal it between the couch cushion and the frame. The officers then put Davis against the wall with the two other men. They immediately went to the couch and retrieved the object, which was later tested and found to be crack cocaine.

Davis presented evidence in an attempt to show that Davis never possessed the crack cocaine. Davis claimed the crack cocaine belonged to Chaney, who was sitting next to him on the couch, and Chaney hid it in the couch when he heard a knock at the door. Chaney then got up to answer the door, leaving Davis on the couch. Davis also testified that he did not own or ever wear tight pants, and that he wore baggy pants. He claimed that this was the practice of many of the young males in the African American community, and that these baggy pants were referred to as "Jabots."[1]

---

[1] There was considerable confusion at oral argument about the name and spelling of the type of pants at issue. We have elected to refer to the pants as "Jabots" because this is the term used by the parties throughout the litigation.

Whether or not Davis struggled to and then finally succeeded in taking the crack out of his pants pocket was a major issue at trial. The defense argued that the government's story was implausible, because Davis was wearing loose-fitting Jabots on the night in question. During Davis's direct examination, Davis modeled the pants he was wearing for the jury, stating that the pants were similar to the Jabots he was wearing on the night of the arrest. He described what Jabots looked like, who in the community wore them, how they were expected to fit, and how he liked to pay attention to style.

On cross-examination, the government questioned Davis about the Jabots he wore on the night of the arrest. The exchange between the prosecutor and Davis was as follows:

> Q.  . . . Now, did you wear your Jabots today?
> A.  Uh-uh.
> Q.  How come you haven't worn your Jabots to show the jury what your Jabots look like?
> Defense counsel:  Objection, relevance, Your Honor.
> The Court:  Sustained.
> Q.  Do you still have them?
> A.  Do I still have them?
> Q.  Yes.
> A.  Yeah.

That Davis claimed to be wearing baggy pants on the night of the arrest was also addressed during his re-direct examination, as well as in the defense's closing argument.

After the four-day trial, the jury deliberated for two days. During the second day of deliberations, the jury informed the district court that it could not reach a decision. The district court gave the jury an Allen charge, and four hours later the jury returned a guilty verdict. See Allen v. United States, 164 U.S. 492 (1896).

The defense filed a Motion for Judgment of Acquittal and Motion for New Trial. The district court responded with a Memorandum and Order, in which the court referred to the exchange above, and expressed concern that it "may have prejudicially shifted the burden of proof to defendant on an important aspect of the government's case." After receiving briefing from the parties on this issue, the district court granted the Motion for New Trial based on the questions the prosecutor asked Davis on cross-examination.

II.

The government argues on appeal that the district court erred in granting a new trial on the basis that the government improperly shifted the burden of proof to the defendant. We review a grant of a new trial for an abuse of discretion. United States v. Lee, 274 F.3d 485, 493 (8th Cir. 2001). "The test for reversible prosecutorial misconduct has two parts: (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." United States v. Hernandez, 779 F.2d 456, 458 (8th Cir. 1985); see also United States v. Conrad, 320 F.3d 851, 855 (8th Cir. 2003).

We must first determine whether the prosecutor's questions were improper. The case most directly on point is United States v. Long Feather, 299 F.3d 915 (8th Cir. 2002). In that case, Long Feather was accused of kicking a man in the head, who died shortly afterward. Id. During trial, defense counsel inquired into the government's failure to produce the sandals Long Feather wore the night of the incident, and its failure to test them to determine whether they could have caused the victim's injuries. Id. at 918. In its closing argument, the government pointed out that, according to Long Feather's testimony, the sandals were still in his possession. Id.

-4-

On the appeal of Long Feather's conviction, this Court held that, "[w]hile a prosecutor's comments on a defendant's failure to testify can constitute error," see United States v. Moore, 129 F.3d 989, 993 (8th Cir. 1997), comments on defendant's failure to produce his sandals were not improper. Long Feather, 299 F.3d at 918. The Court reasoned:

> The comment certainly carries the implication that Mr. Long Feather should have produced the sandals, and it might have been improper if Mr. Long Feather had had a constitutional right to withhold the sandals from evidence. But we note that the Fifth Amendment prohibits only compelled "testimonial" evidence, United States v. Hubbell, 530 U.S. 27, 34-35 (2000), . . . and that the sandals are not testimonial evidence.

Id. at 919.

The Court found that Long Feather could have been compelled to produce the sandals, just as defendants can be compelled to produce a blood sample, and some types of documentary evidence. Long Feather, 299 F.3d at 919. "Thus government counsel's comment on Mr. Long Feather's failure to produce the sandals could not have been a comment on Mr. Long Feather's decision to exercise a [F]ifth [A]mendment right. It therefore was not improper." Id.

The facts of this case are strikingly similar. As in Long Feather, there was an issue at trial concerning something the defendant was wearing during the alleged crime and the defendant implied that the government should have produced the evidence. As in Long Feather, the prosecution suggested, without stating outright, that the defense should have produced the item as evidence. The argument on appeal was the same: that this comment impermissibly shifted the burden of proof to the defendant. However, as in Long Feather, this comment is not improper, because it is not a comment on a Fifth Amendment right. Thus, it cannot satisfy the test for reversible prosecutorial misconduct. See Hernandez, 779 F.2d at 458. We therefore

find the district court abused its discretion in granting a new trial on the grounds that the prosecutor impermissibly shifted the burden of proof.

The judgment of the district court is reversed, the conviction is reinstated, and the case is remanded for sentencing.

––––––––––––––