SHEPHERD, Circuit Judge.
A jury found Javier Amaya guilty of one count of conspiracy to launder money, in violation of 18 U.S.C. § 1956(a)(1)(B)®. The district court[1] granted appellee’s motion for a new trial. The government now appeals the grant of a new trial. We affirm.
I.
A grand jury indicted brothers Angel Amaya and Javier Amaya and two others for conspiracy to commit money laundering involving proceeds of unlawful drug activities. The grand jury also charged Angel and four others with a drug conspiracy offense. All defendants except the Amaya brothers entered guilty pleas. After two mistrials, the case against the Amayas was finally submitted to a jury.
During the Amaya brothers’ four-day joint trial, the government presented evidence showing that on February 8, 2011, Javier opened a bank account with a Wells Fargo Bank branch in Sioux City, Iowa, using his own name and biographical information. Angel was with Javier when the account was opened, and Javier deposited $7800 in cash provided by Angel into the account. When the teller, who was An *763 gel’s friend, asked Angel where the money came from, Angel replied, “don’t worry about it, you don’t want to know.” Angel also opened a new account that day, depositing $8000 into it. Two of Angel’s associates opened new Wells Fargo accounts on February 8 and either deposited or had deposited into them $8100 and $8000, respectively. Immediately after opening these accounts, the four traveled to California. On February 10 and 11, 2011, the four withdrew the money from their accounts and gave it to Angel who used the money to pay a person known as el Paisa.
The government also presented evidence to the jury including the testimony of witnesses that when Angel was not home that Javier distributed drugs to buyers, that purchasers left payment for Angel with Javier, and that Javier was present when Angel distributed drugs and discussed obtaining large quantities of drugs for resale.
When the jury returned, the foreperson informed the court that the jury had reached a unanimous verdict. After the verdict form was handed to the judge, the judge remarked:
Well, I’ve noticed a problem with the verdict form that wasn’t — it’s our fault. Well, let’s go through — okay.
(Trial Tr. 689.) The court then read the verdict pertaining to Angel where it found him guilty of both the money-laundering conspiracy and the drug conspiracy. The court polled the jury as to the guilty verdict against Angel.
On the verdict form, the jury was presented with a two-part question pertaining to the money-laundering conspiracy charge against Javier. In “Step 1: Verdict” the jury was instructed “[o]n the ‘money laundering conspiracy’ offense in Count 2 of the Indictment and explained in Instruction Nos. 5 and 8, [to] please mark your verdict.” The form, however, did not provide any place for the jury to mark a verdict of guilty or not guilty. The “Step 1: Verdict” continued with instructions that “[i]f you find the defendant ‘not guilty’ in this offense, do not answer the question in Step 2.” In “Step 2: ‘Objectives’ of the ‘Money Laundering Conspiracy,’ ” the jury was instructed “[i]f you found the defendant ‘guilty’ of the ‘money laundering conspiracy’ offense in Count 2 of the Indictment, please indicate which one or more money laundering offenses the conspirators agreed to commit as ‘objectives’ of the ‘money laundering conspiracy.’ ” The jury was given two options in “Step 2” and marked on the verdict form that the “objective” of the offense was “to conceal proceeds of the drug conspiracy.”
The district court explained the error as follows:
Now, with regard to Javier Amaya, the verdict form is inaccurate because it doesn’t have a place for you to check guilty or not guilty in step 1. But you’ve checked objectives — you checked the second objective, to conceal proceeds of the drug conspiracy. But what I want to know is with regard to Javier Amaya, do you find him guilty in step 1 of the money laundering conspiracy?
(Trial Tr. 640.)
The district court then proceeded, without first consulting the parties, to poll the jurors to confirm that they had reached a unanimous verdict as to Javier. Each juror answered affirmatively. The court later performed a second polling “to make sure everybody’s unanimous intent was to find Javier Amaya guilty of money laundering.” The court asked the jury, “Is that your intent?” (Trial Tr. 641.) Again, each juror answered affirmatively. Neither the government nor the defense counsel objected to the procedure and neither sought to make a record of the error in the verdict form.
*764 Both Amaya brothers filed post-trial motions for acquittal or alternatively for a new trial, raising several issues. As relevant to this appeal, Javier argued that the absence of a place to indicate the verdict on the verdict form in combination with the polling of the jury warranted a grant of a mistrial or a new trial. The district court agreed, noting it “remainfed] concerned that the jurors may have felt coerced by the error in the verdict form and, just as importantly, by my immediate attempt to correct that error by polling the jury to obtain their individual verdicts in open court.” The court granted Javier’s motion for a new trial, holding that there was a plain error in the verdict form, that the error had an improper influence on the jury and thus affected Javier’s substantial rights, and that the error of improper procedure affected the fairness, integrity, and public reputation of the judicial proceedings.
The government now appeals, arguing that the district court abused its discretion in granting the motion for a new trial.
II.
“Upon the defendant’s motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.” Fed.R.Crim.P. 83(a). “The decision to grant a Rule 33 motion is within the sound discretion of the District Court, and we will reverse only for an abuse of that discretion.” United States v. Dodd, 891 F.3d 980, 984 (8th Cir.2004)[2] When considering a motion for anew trial, a district court may “weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.” United States v. Campos, 306 F.3d 577, 579 (8th Cir.2002) (quotation omitted). Despite the broad discretion district courts enjoy under this rule, we have endeavored to remind courts that the discretion has limits and the courts “must exercise the Rule 33 authority ‘sparingly and with caution.’ ” Id. (quoting United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir.1980)). “Corresponding to the district court’s broad discretion is the limited scope of our review: we will reverse the district court’s ruling on the motion for new trial only if we find that ruling to be a clear and manifest abuse of discretion.” United States v. Malloy, 614 F.3d 852, 862 (8th Cir.2010) (quoting Lincoln, 630 F.2d at 1319), cert. denied, - U.S. -, 131 S.Ct. 3023, 180 L.Ed.2d 851 (2011). We will find a district court abused its discretion if it “fails to consider a factor that should have been given significant weight, considers and gives significant weight to an improper or irrelevant factor, or commits a clear error of judgment in considering and weighing only proper factors.” Dodd, 391 F.3d at 934.
Because neither party objected to either the verdict form or the polling of the jury, the district court applied the plain error standard in deciding to grant Javier’s motion for a new trial. See Fed. R.Crim.P. 30(d); Fed.R.Crim.P. 52(b); United States v. McBride, 862 F.2d 1316, 1319 (8th Cir.1988) (holding that it is appropriate for district court to apply plain error review to a defendant’s motion for new trial where issues were not objected to during trial). The district court found it committed two specific plain errors. First, it determined that the verdict form for Javier was plainly erroneous because it was obvious that the form should have contained a place for the jury to indicate its verdict but that place was missing on *765 the form. Second, the court decided that it committed error when it “substitut[ed] polling of the jury for the rendering of a verdict on a properly composed verdict form after private deliberations.” The district court held that these combined errors “potentially ha[d] the same effect as polling deadlocked jurors” which the court found may have had a coercive effect on the jury, that being the jury may have rendered a premature verdict without the ordinary safeguards of private deliberations with a proper verdict form. Finally, the district court held that the errors were such a departure from the normal procedure for returning and recording a jury verdict that it seriously affected the fairness, integrity, or public reputation of the judicial proceedings. United States v. Poitra, 648 F.3d 884, 887 (8th Cir.2011) (“To obtain relief under a plain-error standard of review, the party seeking relief must show that there was an error, the error is clear or obvious under current law, the error affected the party’s substantial rights, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.”).
We find no abuse of discretion in the district court’s determination that the verdict form error and the substitution of a polling procedure for a return of the verdict constituted plain error. First, although Federal Rule of Criminal Procedure 31(a) provides only that “[t]he jury must return its verdict to a judge in open court,” the clear intent of the district court in this case for the jury to indicate the verdict on a properly completed verdict form is obvious. By comparison, for both counts against Javier’s brother Angel the jury was provided a place to indicate its verdict.[3] Next, the Rules dictate that the court may poll the jury “[ajfter a verdict is returned.” Fed.R.Crim.P. 31(d). There is simply no procedure in place for the jury to return a verdict through polling by the court. “The purpose of a jury poll ‘is to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned,’ to ensure that ‘a unanimous verdict has in fact been reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented.’ ” United States v. Cherry, 720 F.3d 161, 167 (4th Cir.2013) (quoting United States v. Carter, 772 F.2d 66, 68 (4th Cir.1985)). Thus, the district court’s finding of plain error was not an abuse of discretion.[4]
*766 Nor do we find that the court abused its discretion when it determined that the errors affected Javier’s substantial rights. See United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (holding that in most cases, for an error to affect a defendant’s substantial rights, the error must be prejudicial). In the circumstance of polling a deadlocked jury, the Supreme Court explained:
Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned.
Brasfield v. United States, 272 U.S. 448, 450, 47 S.Ct. 135, 71 L.Ed. 345 (1926). We have previously indicated that concerns about errors in polling depend on “whether it is likely that the proceedings conducted by the trial court coerced the juror in arriving at his final verdict.” Amos v. United States, 496 F.2d 1269, 1272 (8th Cir.1974). As Brasfield cautions, the conducting of a poll of the jury before a verdict has been properly returned “can rarely be resorted to without bringing to bear in some degree, serious although not measurable, an improper influence upon the jury.” Brasfield, 272 U.S. at 450, 47 S.Ct. 135. The district court expressed concerns that when it substituted the polling procedure for a return of verdict through a properly completed verdict form it fell within Brasfleld’s warning that the action “can rarely be resorted to without bringing to bear in some degree ... an improper influence upon the jury.” Id.
Finally, the district court noted that the error in the verdict form and the polling procedure was a significant departure from regular procedure “as to seriously affect the fairness, integrity, or public reputation of judicial proceedings.” Indeed this procedure is so irregular that the district court could “find no opinions of the federal Circuit Courts of Appeals or the Supreme Court squarely on point with the circumstances presented here.” We have also been unable to find cases which are “on point” or more analogous to those considered by the district court or presented by the parties in their briefs. This suggests that the procedure employed by the district court to return and record the verdict in this case was a significant departure from traditional practice. While nothing in the criminal rules specify the manner in which the verdict must be returned, the facts of this case make it obvious that the court intended the jury to indicate its verdict on the verdict form. In light of this, we cannot say the district court’s determination that the procedure seriously affected the “fairness, integrity, *767 or public reputation of judicial proceedings” was an abuse of discretion.
We note that the government’s brief presents strong arguments, does a commendable job of attempting to distinguish adverse cases, and cites to cases that, while not binding or squarely on point, generally support its argument. Indeed, the dissent finds the government’s argument to be persuasive, and we recognize that the dissent’s opinion makes a case for why the district court could have been affirmed had the court denied the motion for a new trial. However, the district court granted the motion for a new trial, and in so doing, also presented persuasive and introspective reasoning for why its missteps justified the grant of a new trial. Under the confines of the abuse of discretion review, “we defer to the ruling of a respected, able trial judge” because “the trial judge, not an appellate court reading a cold record, can best weigh the errors against the record as a whole to determine whether those errors in the conduct of the trial justify a new trial.” McBride, 862 F.2d at 1320.
III.
Accordingly, we affirm.

. The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

. Both parties agree that abuse of discretion is the appropriate standard of review in this case despite the district court’s application of a plain error standard.

. The dissent emphasizes that "district courts have wide latitude in constructing either written or oral jury instructions, including written or oral verdict information.” See infra at 771. Assuming the district court could have made a conscious decision to permit the return of verdict by oral pronouncement, that is not the procedure the district court elected to utilize in this case. Rather, the district court's instructions demonstrated a clear intent for the jury to return its verdict on a written verdict form. The critical component of the form — a place for the jury to indicate the verdict-was missing. We reject the dissent’s characterization of this significant error as "a minor ambiguity” or a "slight imperfection.” See infra at 767, 772. The dissent cannot dispute that the district court had the discretion to require the jury to return the verdict through a completed verdict form, and the district court clearly instructed the jury in this case to do so, but then provided a fatally flawed form to the jury. Compounding this significant error, the district court, without taking time to properly consider how best to proceed when the intended procedure was disrupted, polled the jury with the presumptive question "do you find him guilty in step 1 of the money laundering conspiracy?” (Trial Tr. 640.)

. The dissent characterizes our decision in Cundiff v. United States, 501 F.2d 188 (8th Cir.1974) (per curiam), as "a substantially similar context” to the circumstances presented here. See infra at 772. Cundiff is easily distinguishable from this case. The defendant in Cundiff recognized the potential error be *766 fore the jury returned the verdict, and the district court called the jury back into the courtroom before completion of deliberations to explain the proper use of the forms and to clarify that the jury was not required to find the defendant guilty of the lesser-included offense. Cundiff, 501 F.2d at 190. The dissent also attempts to draw a comparison to the use of a jury poll in the two cases, claiming that the district court in Cundiff "also conducted a jury poll ... as was also done in this case.” See infra at 773. Such claim by the dissent fails to draw an important distinction. The polling in this case was done in substitution for the return of the verdict whereas the polling in Cundiff was conducted "[ajfter the jury returned its verdict.” Cundiff, 501 F.2d at 190.