# United States Court of Appeals

## For the Eighth Circuit

_____

No. 23-3339

_____

United States of America

*Plaintiff - Appellee*

v.

Marquice Shaquan Morris

*Defendant - Appellant*

_____

No. 23-3341

_____

United States of America

*Plaintiff - Appellee*

v.

Marquice Shaquan Morris

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: June 14, 2024
Filed: July 31, 2024

_____

Before LOKEN, ERICKSON, and GRASZ, Circuit Judges.

_____

ERICKSON, Circuit Judge.

A jury convicted Marquice Morris of conspiracy to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. He subsequently moved for acquittal or, in the alternative, a new trial. The district court[1] denied Morris's motions, sentenced him to an imprisonment term of 190 months, and revoked his supervised release. Morris appeals his conviction, revocation, and sentence. We affirm.

## I.    BACKGROUND

In 2018, Morris was sentenced in North Dakota to a 28-month term of imprisonment to be followed by a 3-year term of supervised release for conspiracy to distribute and possess with intent to distribute controlled substances. He was released to supervision in October 2019. Jurisdiction over his supervised release term was transferred to the District of Minnesota in August 2021. In October 2022, Morris's supervising officer submitted a petition for revocation to the court, referencing a pending federal indictment for conspiracy to distribute controlled substances in Minnesota.

The indictment alleged that beginning in the spring of 2022 and continuing through October 2, 2022, Morris and his co-defendant, Brandon Johnson, conspired to distribute in Minnesota at least 400 grams of a mixture and substance containing a detectible amount of fentanyl. Johnson pled guilty while Morris proceeded to trial. At trial, evidence showed that Morris invited Johnson to accompany him on a trip to Phoenix, Arizona. While Morris did not initially disclose the purpose of the trip to

---

[1]The Honorable Patrick J. Schiltz, Chief Judge, United States District Court for the District of Minnesota.

Johnson, a few days before their departure Johnson became aware that Morris intended to transport drugs from Arizona back to Minnesota.

Morris purchased plane tickets for himself and Johnson, and the pair flew to Phoenix on September 30, 2022. They stayed at an Airbnb that Morris had rented. The next day, Johnson and Morris went out on separate missions—Morris to purchase approximately 8 kilograms of fentanyl and Johnson to purchase a firearm. When they arrived at the Airbnb, Morris gave the fentanyl to Johnson, who sent a picture of the fentanyl to his cousin. Morris also provided Johnson with a bag to transport the fentanyl.

On October 1, 2022, Johnson boarded a Greyhound bus to return home, using a ticket purchased by Morris's girlfriend. During the trip, the bus made a scheduled layover stop in Amarillo, Texas, and the passengers all disembarked. Meanwhile, Amarillo Police Officer Eric Skaggs ran his drug sniffing dog around the bus. The dog alerted to Johnson's bag. On further examination, Officer Skaggs discovered the fentanyl and the firearm. Johnson fled the station and called Morris, telling him the drugs had been found and he needed to get out of Texas. Shortly thereafter, Johnson was apprehended by Officer Skaggs, who contacted the Drug Enforcement Administration ("DEA"). Johnson told DEA Agents that Morris was his source of supply. The agents then set up recorded calls between Johnson and Morris, who had returned to Minnesota. During one call, Morris told Johnson that he would send an Uber to pick him up in Amarillo, even though Morris was unhappy about Johnson leaving the bag of drugs on the bus now headed to Oklahoma City.

At trial, most of the government's case rested upon Johnson's testimony. The government corroborated his testimony with phone records and the testimony of two law enforcement officers: Amarillo Police Officer Eric Skaggs and DEA Special Agent Christopher Brown. In response, Morris argued that he invited Johnson to Arizona as part of his musical entourage, not to transport drugs. According to Morris, Johnson, unbeknown to him, used the musical trip to obtain drugs and a firearm, working in conjunction with Johnson's cousin. Morris presented a witness

who indicated that she would accompany Morris on trips to different locations in the United States for the purpose of producing audio and video recordings and Morris would pay for the costs of travel and housing. Morris explained that the phone calls expressing his concern about the bag of drugs was based on his fear of being falsely accused of drug trafficking. After the jury found Morris guilty, he unsuccessfully moved for a judgment of acquittal or, alternatively, a new trial.

At sentencing, the district court applied an obstruction of justice enhancement to Morris's Sentencing Guidelines calculation based on his pretrial conduct. The district court found that: (1) Morris engaged in "a calculated effort to bribe" Johnson by having his girlfriend twice deposit money into Johnson's inmate account, and (2) Johnson was pressured by another inmate to sign an affidavit exonerating Morris. Based on a total offense level of 36 and criminal history category IV, the district court determined Morris's advisory Guidelines range was 262 to 327 months. The court imposed a below-Guidelines sentence of 190 months of imprisonment, to be followed by a 5-year term of supervised release and also revoked Morris's term of supervised release and sentenced him to a concurrent 24-month imprisonment term with no additional term of supervision to follow in that case.

## II.    ANALYSIS

### a.    Sufficiency of the Evidence

We review the sufficiency of the evidence supporting a conviction *de novo*. United States v. Bailey, 54 F.4th 1037, 1039 (8th Cir. 2022). In doing so, we view "the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." United States v. Espino, 317 F.3d 788, 792 (8th Cir. 2003).

Morris does not dispute that a conspiracy to distribute fentanyl existed, that he knew of Johnson's involvement in a drug conspiracy, or the quantity of drugs charged in the conspiracy. Rather, Morris argues Johnson's testimony was

-4-

unreliable to prove he knowingly entered the conspiracy, and he should have been acquitted. In support of his claim, Morris highlights that Johnson initially lied to the arresting officers when he was apprehended, and that Johnson has always had strong motivation to lie in exchange for a lighter sentence.

The jury was fully aware that Johnson initially lied to the arresting officers and that he had strong motivation to lie because he faced a potential life sentence due to his lengthy criminal history. Notwithstanding this knowledge, the jury found Morris guilty. A district court is precluded from making its own determination on a witness's credibility to overrule a jury's verdict. United States v. Kirkie, 261 F.3d 761, 768 (8th Cir. 2001). Because the jury is the final arbiter of witness credibility, its credibility determinations are virtually unassailable on appeal. United States v. Keepseagle, 30 F.4th 802, 813 (8th Cir. 2022).

As to Morris's challenge to the reliability of his co-defendant's testimony, the test for rejecting an accomplice's testimony is whether it is "incredible or unsubstantial on its face." United States v. Maxwell, 61 F.4th 549, 559 (8th Cir. 2023). Here, viewing the evidence in a light favorable to the verdict, Johnson testified about Morris making travel arrangements for the pair to go to Arizona to get drugs to bring back to Minnesota to distribute. There is evidence corroborating Johnson's testimony, including recorded phone conversations between Morris and Johnson, phone and text message records between Morris and Johnson, and the testimony of two law enforcement officers. Because there is sufficient evidence in the record to support the jury's verdict, the district court did not err in denying Morris's motion for judgment of acquittal.

b.     Venue

While Morris raised the issue of venue in his Rule 29 motion for acquittal, the Supreme Court recently held that acquittal is not the appropriate remedy for a prosecution completed in an improper venue, even when styled as a motion for judgment of acquittal under Rule 29. Smith v. United States, 599 U.S. 236, 253 (2023). The proper remedy is retrial. Id. at 252. We review the district court's

venue determination applying the abuse of discretion standard.  <u>See</u> <u>United States v. Amaya</u>, 731 F.3d 761, 764 (8th Cir. 2013).  "An abuse of discretion occurs when the court fails to consider a relevant factor that deserves significant weight, when it gives an irrelevant factor significant weight, or when the court commits a clear error in weighing the relevant factors."  <u>United States v. Campbell</u>, 410 F.3d 456, 464 (8th Cir. 2005).  Even then, we will only reverse the district court's ruling if it is "a clear and manifest abuse of discretion."  <u>Amaya</u>, 731 F.3d at 764.

In a conspiracy case, venue is proper "in any district where any conspirator commits an overt act, even if other conspirators were never physically present in that district."  <u>United States v. Nguyen</u>, 608 F.3d 368, 374 (8th Cir. 2010).  Here, the jury was instructed that the government must prove it is more likely true than not true that the offense charged began, continued, or ended in the District of Minnesota.  During the timeframe of the conspiracy, Johnson and Morris were living in Minnesota.  When Morris left with Johnson to go to Arizona, Johnson knew it was to accompany Morris to purchase drugs to distribute in Minnesota.  In addition, Morris, while in Minnesota, attempted to assist Johnson in eluding law enforcement when the drugs were found in Johnson's possession in Texas.  Venue was proper in Minnesota.

### c.    New Trial

Morris appeals the denial of his motion for new trial, which we review for an abuse of discretion.  <u>Amaya</u>, 731 F.3d at 764.  The key question is whether a new trial should have been granted to avoid a miscarriage of justice.  <u>McKnight v. Johnson Controls, Inc.</u>, 36 F.3d 1396, 1400 (8th Cir. 1994).

Morris presents the same arguments as he did for acquittal, which we have rejected.  Notably, the district court found that Morris's defense theory lacked credibility when compared to the evidence admitted at trial.  Upon review of the record, we find no abuse of discretion in the district court's review or assessment of the evidence, nor has Morris made a sufficient showing to demonstrate that upholding the verdict would result in a miscarriage of justice.

### d. Sentencing Enhancement

Lastly, Morris challenges the application of an obstruction of justice enhancement under U.S.S.G. §3C1.1.  The enhancement may be applied if a defendant threatened, intimidated, or otherwise unlawfully influenced a co-defendant, directly or indirectly, or attempted to do so.  U.S.S.G. §3C1.1, cmt. 4.  We review a district court's application of the Sentencing Guidelines *de novo*, and its findings of fact for clear error.  United States v. Gomez-Diaz, 911 F.3d 931, 936 (8th Cir. 2018).

In applying the enhancement, the district court relied on two things: (1) two deposits that Morris's girlfriend made into Johnson's inmate account, and (2) another inmate pressuring Johnson to sign a completed affidavit exonerating Morris.  Johnson signed and sent the affidavit along with a letter to his attorney explaining that he had been pressured into signing the affidavit and that he was afraid not to comply.  While Morris maintains the government lacked direct evidence linking him to either incident and the district court erroneously relied on Johnson's self-serving testimony, this Court has noted that circumstantial evidence derived from the testimony of a cooperating co-defendant is sufficient to support a sentencing enhancement.  See United States v. Hemsher, 893 F.3d 525, 533-34 (8th Cir. 2018) (affirming firearm enhancement based on circumstantial evidence provided by cooperating co-defendant).  By using his girlfriend and another inmate, there is sufficient evidence to show Morris indirectly attempted to influence and intimidate Johnson.  There is no error, clear or otherwise, in the district court's application of this enhancement.

## III.  CONCLUSION

We affirm the judgments of the district court.

_____