# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1397
_____

United States of America

*Plaintiff - Appellant*

v.

Thomas Avery Drum

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of South Dakota - Northern
_____

Submitted: December 17, 2024
Filed: June 6, 2025
_____

Before SMITH, GRUENDER, and STRAS, Circuit Judges.
_____

SMITH, Circuit Judge.

A jury convicted Thomas Avery Drum of aggravated sexual abuse of a child under 12, in violation of 18 U.S.C. §§ 1153, 2241(c), 2246(2)(D), and abusive sexual contact of a child, in violation of 18 U.S.C. §§ 1153, 2244(a)(5), 2246(3). Drum moved for acquittal or, alternatively, a new trial. The district court denied Drum's motion for acquittal but granted his motion for a new trial. The government now

appeals. Having jurisdiction under 18 U.S.C. § 3731, we reverse the district court's order granting a new trial, reinstate Drum's convictions, and remand for sentencing.

## I. *Background*

In April 2021, J.L.K., then 13 years old, told her school principal that Drum, her mom's ex-boyfriend, "inappropriately touched [her] down the . . . front of her pants" in his bathtub, located on tribal land. R. Doc. 86, at 28. A few weeks later, J.L.K. participated in a forensic interview. The interviewer testified that J.L.K. said that Drum "touched her on the outside of her vaginal area" and that she "felt his hard penis on her back." *Id.* at 39. In December 2021, Drum denied the allegations and said that he was never in the bathtub with J.L.K. In March 2022, Drum participated in a polygraph interview with several members of law enforcement, including FBI Special Agent Thomas Wittman. Drum admitted that he was naked in the bathtub with his own children when J.L.K.'s mother put both of her own children, including J.L.K., in the tub with him. Drum said that he immediately left the bathroom because it "wasn't right" and "they weren't his kids." *Id.* at 92. When Agent Wittman asked Drum if he touched J.L.K.'s vagina, Drum said "no." *Id.* at 101. The polygraph examiner deemed this denial deceptive, and Drum failed the polygraph test. Following the polygraph, Agent Wittman continued to interview Drum. Agent Wittman said it was "absolutely clear" that Drum touched J.L.K.'s vagina, and Drum responded "mmhmm." R. Doc. 106, at 10. Agent Wittman said there was "[n]o doubt in [his] mind" that Drum touched J.L.K.'s vagina, and Drum again responded "mmhmm." *Id.* In fact, Drum responded "mmhmm" after each of Agent Wittman's statements in this portion of the interview. *Id.* Agent Wittman testified at trial that these responses were "an acknowledgement of hearing what [Agent Wittman] said." R. Doc. 86, at 110.

Drum was later charged with one count of aggravated sexual abuse of a child under 12, in violation of 18 U.S.C. §§ 1153, 2241(c), 2246(2)(D) (Count I), and one count of abusive sexual contact of a child, in violation of 18 U.S.C. §§ 1153, 2244(a)(5), 2246(3) (Count II). At trial, amidst dozens of overruled leading-question objections, J.L.K. testified about two occasions when Drum allegedly touched her

vagina. First, J.L.K. testified that when she was seven, she was in the bathtub with her sister when Drum entered wearing a towel, told her sister to leave, took his towel off, got in the tub with J.L.K., and put her on his lap.

Q Where did he try to touch you?

A My private.

Q What do you call your "private"?

A Down there.

Q Okay. Do you know the formal word for your "private"?

A Vagina.

Q Okay. You say he tried to touch you. What do you mean by that? Was he able to touch you on your vagina?

. . . .

A Yeah.

Q What was he using when he touched you?

A His hands.

Q What else did you notice or feel?

A His—he was trying to put his thing in mine.

Q What do you mean by "thing"?

A His penis.

. . . .

Q Okay. Was he able to put his thing anywhere in you?

-3-

A     No. I got out before he tried.

R. Doc. 85, at 22–23.

Second, J.L.K. testified that Drum touched her in his bedroom when she was sleeping on his bed. She testified that she woke up and was "bleeding all over" from her vagina. *Id.* at 28. Drum was not in the bedroom, and it was only her and her sister. She asked Drum to take her home because she thought she had her period.

At trial, the government played a recording of Drum's "mmhmm" responses from the March interview and provided jurors with transcripts. Drum's counsel asked Agent Wittman about Drum's denials in that same interview, and the government objected, saying that Drum "opened the door to something with that question." R. Doc. 86, at 98. Out of the presence of the jury, the government argued that Drum opened the door to evidence that he failed his polygraph test and that if Drum did not want the polygraph in evidence, his prior denials should be excluded as hearsay. The court overruled the government's objection and held that the question did not open the door to polygraph evidence. Agent Wittman then testified that prior to the portion of the interview that was recorded, Drum denied touching J.L.K.'s vagina.

After the government rested its case, Drum moved for judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing that insufficient evidence of penetration existed. The district court denied his motion because penetration was not needed for a sexual act. But the court did note that J.L.K.'s testimony was "all over the map" and "difficult to follow." *Id.* at 151. It said that it would "revisit [the motion] later." *Id.* Drum offered no evidence, and after resting his case, he renewed his motion for acquittal because the government "failed to prove a prima facie case as to Count I and Count II." *Id.* at 156. The court denied the motion. It again noted that J.L.K. was "all over the map with different versions" but would "deal with that after [it] s[aw] what the jury d[id]." *Id.* at 156–57.

-4-

The government then proposed Jury Instruction No. 9, which said:

> Evidence has been introduced that a statement accusing the defendant of a crime charged in the Indictment was made, and that the defendant did not at that time deny the accusation, object to, or contradict the statement. If you find that the defendant was present and actually heard and understood the statement, and that it was made under such circumstances that the defendant would be expected to deny, contradict, or object to it if it were not true, then you may consider whether the defendant's silence was an admission of the truth of the statement.

R. Doc. 70, at 10. Drum objected to this instruction because Drum's "mmhmm" responses were not admissions but rather acknowledgments of what Agent Wittman said and because Drum previously denied the allegations. The government argued that the instruction was appropriate because Drum was confronted with Agent Wittman's accusations, yet "he didn't deny, contradict, or object to it." Doc. 86, at 162. The court overruled Drum's objection and admitted the jury instruction.

In its closing argument, the government argued that Jury Instruction No. 9 was "very important" and characterized Drum's "mmhmm" responses as a "rolling set of admissions." *Id.* at 176–77. Drum objected, arguing that he had a right not to incriminate himself. The district court acknowledged this right but said: "[H]e did say something. . . . I think when the agent was, in effect, accusing him, he said, 'Mm-hmm.' Well what does that mean? It's up to the jury." *Id.* at 178. The government argued that the jury could consider "whether [Drum's] silence was an admission of the truth of the statement" and that his responses were admissions. *Id.* The court then said: "Well, he wasn't silent. He said, 'Mm-hmm,' whatever that means." *Id.* at 179.

The jury convicted Drum on both counts. After trial, Drum filed a renewed motion for acquittal or a new trial. In support of his motion for acquittal, Drum argued that insufficient evidence existed for the touching element of both counts. Count I required proof that Drum intentionally touched (or attempted to touch) J.L.K.'s genitalia, not through clothing. *See* 18 U.S.C. § 2246(2)(A)(D). Count II required proof that Drum intentionally touched (or attempted to touch) J.L.K.'s

"genitalia, anus, groin, breast, inner thigh, or buttocks" directly or through clothing. *See id.* § 2246(3). Drum argued that the bathtub incident did not meet the touching requirement, noting that J.L.K.'s testimony was contradictory. He also argued that the bedroom incident was insufficient because there was no evidence that Drum touched J.L.K.'s vagina or caused the bleeding. In support of his motion for a new trial, Drum simply said: "As discussed above, the evidence here is insufficient to sustain the verdicts in this case." R. Doc. 89, at 5.

The district court denied Drum's motion for acquittal because, viewing the evidence in the light most favorable to the verdict, there was enough evidence to support both convictions. Nevertheless, the district court granted Drum's motion for a new trial. It noted that—though these motions are disfavored and should be granted sparingly—it had broad discretion under Federal Rule of Criminal Procedure 33 and could grant a new trial if there was a miscarriage of justice. The district court gave several reasons for its order.

First, the court said that it was "troubled by the testimony as to Count I." R. Doc. 106, at 6. The court acknowledged that it overruled several leading-question objections during J.L.K.'s testimony. "However, after reviewing the record, it has become clear that leading testimony, together with other circumstances, may have played a large role in this case." *Id.* Specifically, the court said that "the government introduced the term 'vagina,' and J.L.K. then agreed that is where she was touched." *Id.* It also said that J.L.K. "was clear that any touching was on the 'outside' which does not include the vagina." *Id.* at 7.

Second, the court said that the "trial outcome was likely affected" by the introduction of Drum's "mmhmm" responses and Jury Instruction No. 9. *Id.* at 8–9. Agent Wittman testified on cross-examination that Drum denied the allegations in the same interview. But the jury did not know that the change in his responses came after the polygraph test showed his denials were consistent with deception. The court was worried that the jury could have interpreted the court's own diction of "mmhmm" as suggesting that Drum was admitting those allegations. The court also

said that it should not have given Jury Instruction No. 9 "which was unfairly prejudicial to the defendant." *Id.* at 9. Thus, the court found that justice required a new trial.

The court did not stop there. It also mentioned that it was "mindful" that the Count I conviction carried a mandatory 30-year minimum sentence, which the court thought was "outrageous" given Drum's history and characteristics. *Id.* at 10. The court summarized by saying that "[a]ll of the foregoing, taken together, l[eft] the [c]ourt with the belief that the interests of justice require[d] a new trial." *Id.* at 11. The government then appealed the order granting a new trial.

## II. *Discussion*

Federal Rule of Criminal Procedure 33(a) says: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). "Motions for new trials based on the weight of the evidence are generally disfavored." *United States v. Knight*, 800 F.3d 491, 504 (8th Cir. 2015) (quoting *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002)).

A "district court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority sparingly and with caution." *Campos*, 306 F.3d at 579 (internal quotation marks omitted). Unlike a motion for acquittal, when making a new trial determination, the district "may weigh the evidence, choose to believe or disbelieve witnesses, and may grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Lemoine*, 104 F.4th 679, 686 (8th Cir. 2024) (internal quotation marks omitted). "[T]he district court is not required to view the evidence in the light most favorable to the government" and may "grant a new trial if it is convinced that the evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred." *Id.* (internal quotation marks omitted).

We will affirm the decision to grant a new trial "absent a clear and manifest abuse of discretion." *Id.* (internal quotation marks omitted). A district court abuses its discretion when it "fails to consider a factor that should have been given significant weight, considers and gives significant weight to an improper or irrelevant factor, or commits a clear error of judgment in considering and weighing only proper factors." *United States v. Amaya*, 731 F.3d 761, 764 (8th Cir. 2013) (internal quotation marks omitted).

We conclude that the district court abused its discretion in granting Drum's motion for a new trial. The district court's discretion to grant a new trial in a criminal case is restricted to those grounds raised by the defendant in his Rule 33 motion. We have held that a district court cannot grant a new trial sua sponte without a motion. *See United States v. Martinson*, 419 F.3d 749, 752 (8th Cir. 2005) (holding, on plain error review, that "the district court committed no error, plain or otherwise, in not granting [the defendant] a new trial" because the defendant failed to move for one and the district court thus "lacked the power" to grant a new trial). To hold otherwise "would raise double jeopardy concerns." *Id.* (citing *United States v. Smith*, 331 U.S. 469, 474–75 (1947)). Further, we have said that a "district court d[oes] not have the power to grant a motion for new trial on grounds that were not raised by [the defendant] in his timely-filed motion under Federal Rule of Criminal Procedure 33." *United States v. Burrage*, 687 F.3d 1015, 1024 (8th Cir. 2012) (holding, on plain error review, that the district court did not err in denying a defendant's Rule 33 motion "alleging erroneous jury instructions and prosecutorial misconduct" because, on appeal, the defendant argued that "the district court should have granted a new trial because the verdict was against the weight of the evidence" but the district court "did not have the power" to grant the new trial on a ground not in his motion), *rev'd and remanded on other grounds*, 571 U.S. 204 (2014).

Though we have never directly held that a district court abuses its discretion in this way, "a consensus has emerged among our sister circuits that, 'even if a defendant moves for a new trial, a trial judge may not grant a new trial on a ground not raised in the motion.'" *United States v. Rafiekian*, 991 F.3d 529, 551 (4th Cir.

2021) (quoting *United States v. Wright*, 363 F.3d 237, 248 (3d Cir. 2004)); *see also United States v. Howard*, 815 F. App'x 69, 80 (6th Cir. 2020) (unpublished) ("The phrase '[u]pon the defendant's motion' implies not just that the court's grant of a new trial will come after the motion in time but also that it will be related to the content of the motion." (alteration in original) (quoting Fed. R. Crim. P. 33(a))). For example, in *Rafiekian*, the district court granted a new trial on several bases, and the Fourth Circuit found each basis improper. 991 F.3d at 549. Relevant here, the district court "based its grant of a new trial on the insufficiency of [a jury instruction]—a ground not raised in Rafiekian's Rule 33 motion." *Id.* at 551. Instead, Rafiekian argued "that the verdict was against the weight of the evidence." *Id.* at 551 n.24. The decision to grant a new trial on a ground not in the Rule 33 motion was an abuse of discretion. *Id.* at 551.

We find the Fourth Circuit's analysis persuasive. The court noted that Rule 33 only allows a district court to grant a new trial "upon the defendant's motion." *Id.* (cleaned up). "[S]uch a limitation is not present in the Rule's civil analogue, Federal Rule of Civil Procedure 59, which authorizes trial courts to grant a new trial either upon a party's motion or by the court's own initiative—including 'for a reason not stated in the motion.'" *Id.* (quoting Fed. R. Civ. P. 59(d)). "[T]he Rules' drafters 'would have inserted comparable language in the Criminal Rules' had they meant to empower a court 'to grant a new trial for its own reason not stated in the motion for new trial' in a criminal case, as they did in the civil context." *Id.* (quoting *United States v. Newman*, 456 F.2d 668, 669–70 (3d Cir. 1972)). Here, Drum moved for acquittal based on the weight of the evidence, and the district court granted a new trial based on (1) J.L.K.'s testimony and the use of leading questions and (2) Jury Instruction No. 9 and the use of Drum's "mmhmm" responses.[1] Because Drum did

---

[1] The district court's order also noted that it was "mindful" of the mandatory minimum after it found the interests of justice required a new trial based on the leading questions and Jury Instruction No. 9. R. Doc. 106, at 10. A district court cannot grant a motion for new trial "simply because the judge disagrees with the penalty required by law." *Gov't of Virgin Islands v. Mills*, 935 F.2d 591, 597 (3d Cir. 1991). Though this may be an improper factor, the district court must "give[]

not raise those issues in his Rule 33 motion, we find that the district court abused its discretion in granting a new trial on those grounds.

To avoid this error, Drum avers that the district court did not grant a new trial on new grounds because the district court's reasons "went directly to the weight of the evidence." Appellee's Br. 23. Even accepting that inconsistencies in J.L.K.'s testimony may go to the weight of the evidence, the district court focused its order on the use of leading questions and the jury instruction related to Drum's "mmhmm" responses. Drum did not mention these issues in his motion, which only said that there was insufficient evidence that Drum touched J.L.K. based on inconsistencies in her testimony. Insufficiency of the evidence is not a catch-all for all potential errors. For example, in *Rafiekian*, the defendant moved under Rule 33 based on the weight of the evidence, and the Fourth Circuit found that the district court's discussion of an insufficient jury instruction was a ground not raised in that motion. 991 F.3d at 551. Similarly, in *Burrage*, we found that a district court "did not have the power to grant a motion for a new trial," 687 F.3d at 1024, based on the weight of the evidence because the defendant's motion "alleg[ed] erroneous jury instructions and prosecutorial misconduct," *id.* at 1019. We are not persuaded that Drum's motion based on the insufficiency of the evidence included grounds related to leading questions and improper jury instructions.

Lastly, Drum asks this court to "remand for consideration of whether Drum can show excusable neglect" if this court finds that the district court erred by granting the motion on new grounds. Appellee's Br. 28. Drum relies on *United States v. Mink*, 107 F.4th 824 (8th Cir. 2024), which said that Federal Rule of Criminal Procedure 45(b)(1) "allows a district court, upon a party's motion, to extend a filing deadline 'if the party failed to act because of excusable neglect,'" *id.* at 826. We

---

significant weight to an improper . . . factor" to abuse its discretion. *See Amaya*, 731 F.3d at 764. Because we find that the district court abused its discretion by granting a new trial on grounds not in Drum's motion, we do not need to decide whether the district court's discussion of the mandatory minimum was significant enough to arise to an abuse of discretion.

decline to remand for consideration of whether Drum can show excusable neglect. First, this is not a scenario like *Mink* in which the party moved for a new trial three years after his conviction but argued that the untimeliness was excusable neglect. *Id.* Drum does not seek "to extend a filing deadline," *id.*, because he met the deadline: he filed a timely motion that simply did not include the grounds upon which the court based its ruling. Second, even though this court can conduct an "independent consideration" of the excusable-neglect factors, *id.* at 827 (internal quotation marks omitted), Drum does not argue that there was excusable neglect and only asks us to remand so that he can do so below. We are doubtful that Drum could meet the excusable neglect standard given his lack of reasons for the delay, the prejudice to the government, and the potential delay to the proceedings. *See id.* at 829–30 (finding that "untimeliness was not the product of excusable neglect" "given the inordinate length of the delay and Mink's insufficient reasoning for it, the prejudice that the Government would encounter if the district court ordered a new trial, and the absence of good faith in filing the combined motion"). Regardless, the proper remedy is to reverse the order granting a new trial, reinstate the conviction, and remand for sentencing. *See Rafiekian*, 991 F.3d at 552; *Newman*, 456 F.2d at 672; *United States v. Nguyen*, 507 F.3d 836, 839 (5th Cir. 2007); *see also United States v. Davis*, 367 F.3d 787, 790 (8th Cir. 2004).

### III. *Conclusion*

Accordingly, we reverse the district court's order granting a new trial, reinstate Drum's convictions, and remand for sentencing.

STRAS, Circuit Judge, concurring in part and dissenting in part.

I agree with reversing on Count 2, *see* 18 U.S.C. §§ 1153, 2244(a)(5), 2246(3), but would have affirmed the grant of a new trial on Count 1, *see id.* §§ 1153, 2241(c), 2246(2)(D).

———————————————

-11-